UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

SHARIF & ASSOCIATES, P.C., et al.,      §
                                        §
        Plaintiffs,       §
                                        §
versus                                  §       CIVIL ACTION H-04-4500
                                        §
                                        §
JOHN ASHCROFT, et al.,                  §
                                        §
        Defendants.       §

# Opinion on Summary Judgment

1.    Introduction.

The government denied an employer's application for a visa for one of its workers. The employer and worker argue that the decision was arbitrary and an abuse of discretion. They are right and will prevail.

2.    Background.

Muhammad Ali Kabani, a Pakistani national, worked as a law clerk for Burhan Nomani & Associates in Houston, Texas. He had an H-1B1 visa. These visas allow employers to hire aliens in particular occupations for up to three years. Kabani's visa allowed him to work at Nomani from February 2002 until February 2005; he worked there until November 2002.

He then went to work as a law clerk for Sharif & Associates, P.C., in Houston, Texas. A worker may change employers as long as the visa obtained by his original employer has not expired. His new employer must immediately apply for a new visa. Sharif applied for a new one for November 2002 to February 2005.

Immigration denied Sharif's application. It claimed that Sharif hired Kabani to perform the duties of a paralegal instead of a law clerk. Paralegals are not eligible. Sharif appealed. Immigration denied its appeal in October 2004. It claimed that Sharif failed to demonstrate that its law clerk position qualified as a "speciality occupation."

Sharif has exhausted its administrative remedies and appealed. Immigration claims that the court may reverse its decision only if it was arbitrary or illegal. It was.

3.  Specialty Occupation.

Immigration says that what Sharif hired Kabani to do was not work that qualified for a visa. To qualify as a "specialty occupation," the job must require (1) the application of a highly specialized body of knowledge and (2) at least a bachelor's degree or its equivalent. 8 C.F.R. § 214.2(h)(4)(i)(A)(1). The alien must work in the same field as his degree. §214.2(h)(4)(iii)(C)-(D).

Immigration admits that Kabani is qualified for work in a speciality occupation. He has a degree in business and law from the University of Karachi in Pakistan. His degree is the equivalent of a bachelor of science in legal studies from an American university. Immigration also agrees that Sharif's law clerk position is in the same field in which Kabani earned his legal studies degree.

An employer can prove that its job qualifies as a specialty occupation by demonstrating that:

(1) Normally, a bachelor's degree or its equivalent is the minimum requirement for entry;

(2) A bachelor's degree or its equivalent is common to the industry in parallel positions among similar organizations;

(3) The employer normally requires at least a bachelor's degree for the position; or

(4) The position's duties are so specialized and complex that the knowledge required to perform them is usually associated with the attainment of at least a bachelor's degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)–(4). Sharif's position satisfies more than one of these alternative prerequisites.

A.  Degree Normally Required.

Immigration underestimated the entry requirements for law clerks. It claims that the educational requirements for law clerks and paralegals are identical. Yet, it admits that employers prefer law clerks with bachelor's degrees, a bachelor's degree is the most

significant source of education of law clerks, and the government classifies law clerks as jobs that require college graduates.

Immigration uses the Department of Labor's data to gauge the entry requirements of a potential position. Labor consistently distinguishes between paralegals and law clerks when it analyzes data on the job market. For Sharif's petition, Immigration erroneously focused on Labor's Occupational Outlook Handbook.

Although the handbook has comprehensive analyses of paralegals and many other occupations, it has only a brief, six-line analysis of law clerks. Immigration wrongly equated the length of treatment in the handbook with the importance of the job. It failed to consult Labor's other sources to determine the skills required to become a law clerk.

Immigration overlooked the handbook's distinction between the entry requirements for law clerks and those for paralegals. Although law clerks and paralegals are similar, the handbook shows that law clerks require more education than paralegals. According to it, a bachelor's degree is the most significant source of training for a law clerk. It also lists law clerks and paralegals as members of two separate occupations rather than holders of an identical job labeled with two different names.

Among the three main ways to become a paralegal, the most common is through a two-year associate's degree. People with college degrees in all manner of subjects commonly become paralegals, also. However, they must usually first have paralegal training either on the job or through a paralegal studies certification program.

Labor also differentiates between paralegals and law clerks in the O*Net OnLine. It is a database of the characteristics of occupations in the United States. Labor uses it to determine if the employer will pay the alien the occupation's prevailing wage.

According to the O*Net, most law clerks require a bachelor's degree, although some do not. The O*Net classifies the occupation of law clerk as a code five. A code five requires the completion of a four-year bachelor's degree. In contrast, the O*Net shows that most paralegals get training through a vocational school, work, or an associate's degree. Only some must have bachelor's degrees. Of course, some are simply high school graduates.

Immigration insists that the O*Net is unpersuasive because the O*Net refers to four years of vocational training as an alternative to four years of college. It does not.

Immigration confused Kabani's Pakistani equivalent of an American degree in legal studies with a U.S. degree in paralegal studies. Kabani could practice law in Pakistan with his degree.

Labor's Employment and Training Administration oversees federal job training and employment programs. According to it, law clerks in Harris County, Texas, have been in JobZone four since 2001. Most occupations in JobZone four require a bachelor's degree. In contrast, it places paralegals in Harris County in JobZone three. Most JobZone three occupations require either vocational school, on-the-job training, or an associate's degree.

### B. Common to the Industry.

Immigration defies the objective facts when it asserts that a bachelor's degree is not the industry standard. Sharif gave Immigration evidence of the degree requirements of a cross-section of law clerk employers, including the federal government as well as private law firms. The employers required at least a bachelor's degree.

Immigration claims the employers generally required some law school experience in addition to a bachelor's degree. It claims that unless every law clerk has only a bachelor's degree, the industry does not require one. It is wrong.

Even if some workers have higher levels of education than the average worker in their occupation, the industry's standard for education generally remains that of the average worker. Immigration is not authorized to dictate a higher industry standard for law clerks when Labor's data indicates that most law clerks hold only a bachelor's degree. Immigration and Labor represent the same government. It makes no sense for Immigration to contradict Labor. Immigration is making its own standards – the essence of arbitrariness.

### C. Employer's Position Normally Requires a Degree.

Claiming that Sharif's position "resembles a paralegal" does not neutralize Sharif's evidence that its position is that of a law clerk. Despite Immigration's admission that it gives great weight to the handbook, it ignored the handbook's description of law clerks.

Instead, the officer looked only at the description for paralegals and said that Sharif's position was "substantially the same" as that of a paralegal.

According to the handbook, law clerks assist lawyers or judges by researching or preparing legal documents, and they may meet with clients or assist lawyers and judges in court. The O*Net's description is identical to the handbook's. Sharif's description includes the exact language of the O*Net and handbook.

Immigration argues that Sharif normally requires clerks with law degrees in addition to bachelor's degrees. Sharif's current law clerk has a law degree. However, Sharif's decision to employ one law clerk with a law degree does not permanently restrict it to hiring only law clerks with law degrees. Immigration lacks the authority to dictate an employer's needs.

Sharif is a small firm with four employees. Past hiring is irrelevant if the employer has a present need for employees with different credentials. Sharif's employee education profile may be different than that of a larger firm profile. It is more likely to have greater statistical variations among its employees because it has fewer employees. Immigration failed to consider Sharif's law clerk position within the context Sharif's characteristics. The rule requires a bachelor's degree or its equivalent, nothing more.

        D.        Complexity of Position's Duties.

Immigration claims that Kabani's duties could be performed by a paralegal without a bachelor's degree. Its mis-characterization results from its refusal to examine law clerks' duties. Its review of Sharif's position contradicts Labor's data. Its assumption that a law clerk is the same as a paralegal because they both research, prepare documents, assist lawyers, and make copies was made in a vacuum. By this assumption, a law clerk also has the same job as a title examiner or contract administrator.

Sharif must show Immigration that its position requires the skills that are normally associated with a college graduate. It does. Sharif's description of Kabani's law clerk job contained the same duties that Labor's data sources attribute to other law clerks across America.

In addition, one of the primary duties of Sharif's law clerk position is to interact with South Asian clients. Sharif requires a multilingual law clerk who is familiar with

South Asia.  Even if an occupation does not normally require a bachelor's degree, the position can still qualify for a visa if its requirements are as specialized and complex as a job which would normally require a college graduate.  Immigration failed to consider Sharif's position.  It hobbled its review by focusing on the duties of a paralegal instead of examining the duties of Sharif's position.

4.   Incomplete Record on Appeal.

Immigration denied Sharif a visa for Kabani to perform the same work for which it had granted Kabani a visa to perform at Nomani.  Sharif referred to the Nomani visa throughout its original application and petition on appeal.  Immigration's action is contrary to its regulations and the facts.  It cannot avoid a comparison of the two visas by ignoring the first.

There is no evidence that immigration reviewed the Nomani visa when it denied Sharif's visa.  The appeals officer fretted that his review was confined to the record on appeal even though he admitted that it was missing supporting evidence for the Nomani visa.  At some point during the two years in which Immigration reviewed Sharif's petition and appeal, it should have looked at the Nomani application.  Immigration let Kabani remain in this country on the Nomani visa.  It cannot now claim that the visa was invalid.

Sharif's burden of proof is not so great that it must prove to Immigration the facts that Immigration already knows.  Immigration must "consider all the evidence submitted and such other evidence as [it] may independently require to assist [its] adjudication."  8 C.F.R. § 214.2(h)(9)(i).  Sharif need not submit information that Immigration already has.

The appeals officer excused Immigration's failure to find the Nomani visa by claiming that Sharif did not tell it which office granted it.  Immigration could have easily located the Nomani record or asked Sharif to furnish it.

Visa applications are processed by one of three regional offices by the state where the job is located.  Applications for jobs in Texas are usually handled in Mesquite, Texas.  At the time of Kabani's two applications, Nomani and Sharif shared the same suite in the same building in the same city within the same state.  Immigration cannot rationally claim that it does not know which service center processed the visas.

Immigration also requested no evidence from Sharif about the Nomani visa. It inquired about Kabani's national security registration and his duties at Sharif, but it asked for none of the supporting evidence for his earlier visa. Although requests for evidence are discretionary, Immigration needed the Nomani visa to adjudicate consistently similar requests for similar jobs. It ignored evidence that it should have considered. Its decision was arbitrary.

5. Nomani Visa.

Although Immigration classified Kabani's work for Nomani as that of a law clerk, the appeals officer said that it was not bound to give Sharif's position the same classification. Immigration does not know whether Kabani's law clerk position at Sharif had different duties than his law clerk position at Nomani. Without comparing the two applications, Immigration dismissed the inconsistency of its decisions by guessing that the Nomani visa must have been "erroneously" approved.

Immigration has no evidence that Kabani's Noman visa should not have been approved. Its regulations require it to notify Nomani if it intends to revoke Kabani's Nomani visa. Even if the visa has expired, a petitioner must be notified if the approval of its visa "involved gross error." 8 C.F.R. § 214.2(h)(11)(iii)(A)(5). Immigration must explain the error and allow the petitioner to rebut the revocation. § 103.5(a)(5)(ii). Immigration has not notified Kabani that it intends to revoke his Nomani visa.

10. Conclusion.

Improper administration is not justified by ease of administration. Immigration has no discretion to ignore Sharif's evidence. Sharif's law clerk position qualifies as a specialty occupation. Although Immigration's approval of the Nomani visa does not bind

it to future approvals of visas for Kabani, it cannot make opposing decisions on the same facts. When it does, its arbitrary adjudication exceeds the reach of its discretionary authority.

Signed December 21, 2005, at Houston, Texas.

Lynn N. Hughes
United States District Judge